## BUFORD *v.* BUNN

[No. 477, September Term, 1966.]

204

*Decided June 26, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and
FINAN, JJ.

*Harold J. Rogers,* with whom was *Alfred S. Fried* on the
brief for appellant.

*Charles E. Wehland,* with whom was *C. Orman Manahan* on the brief for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellant contends that the trial court erred in denying his motion to dismiss the paternity action against him instituted by the appellee under the Maryland statutory Paternity Proceedings on the ground of *res judicata,* because, in a previous action for annulment of marriage brought by the appellant against the appellee, the appellee did not raise the issue of paternity, support and custody of the child. We think the trial court was correct.

The appellant and the appellee were allegedly married on October 31, 1964 at Ellicott City. On November 12, 1964, the appellant filed an annulment proceeding in the Circuit Court for Howard County. In his petition, the appellant alleged that he never intended to and did not enter into a marriage contract and did not participate in a marriage ceremony with the appellee at any time. The appellee's answer denied all the material allegations of the appellant's petition. At the time of the filing of her answer, the appellee, to her knowledge, was some months pregnant. However, she did not raise the issue of paternity or ask for support of her child in her answer or at any time during the annulment proceedings. The child was born on March 5, 1965, eight months before the hearing.

It is unnecessary to set forth the testimony adduced at the hearing on the annulment proceedings. In brief, Judge Mayfield found as facts that the parties had engaged in sexual intimacy for some months prior to the purported ceremony, that the appellant had denied paternity of the appellee's child, that the appellee obtained a marriage licence, and that a member of the clergy, acting, in his view, in *loco parentis* of the appellee, pronounced the parties man and wife, without asking the appellant's consent and without any consent by the appellant, expressed or implied. The court concluded that the purported ceremony did not constitute a valid existing marriage.

Thereafter, on January 12, 1966, several months after the decree of annulment, a paternity proceeding was brought against

the appellant under Code (1966 Replacement Volume) Article 16, Section 66A *et seq.*, in the same court and before the same judge, to obtain a judicial determination of the paternity of the appellee's child. Testimony was taken and Judge Mayfield found that the appellant was the child's father. Custody of the child was awarded to the appellee and provision made as to its support. The appellee contends that, in the paternity proceedings, the question of *res judicata* or estoppel by judgment was not adequately raised and was waived, but we assume, *arguendo*, that the question is properly before this Court.

The appellant contends that *res judicata* is a complete bar to subsequent actions between parties involving the same claim or demands and prevents the consideration, not only of those issues which were litigated, but also those which might have been litigated, in the first action. The rule is not applicable in the situation here presented.

Judge Markell, for the Court, stated the principle in *LeBrun v. Marcey*, 199 Md. 223, 86 A. 2d 512 (1952):

> " 'The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand [or] upon a different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point in question to be determined in the later action is the same as that litigated and determined in the original action [Citing cases.]' *Tait v. Western Maryland Ry. Co.*, 289 U. S. 620, 623, 53 S. Ct. 706, 707, 77 L. Ed. 1405. 'In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as

208

an estoppel only as to those matters in issue or points controverted, upon the determination of which the findings or verdict was rendered. *In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.'* " (Emphasis supplied). 199 Md. at 226-27.

Restatement, *Judgments,* Chapter 3, Introductory Note, is to the same effect:

"Where, therefore, the second action is based upon the same cause of action as that upon which the first action was based, the judgment is conclusive as to all matters which were litigated or might have been litigated in the first action.

"Where, however, the subsequent action is based upon a different cause of action from that upon which the prior action was based, the effect of the judgment is more limited. The judgment is conclusive between the parties in such a case only as to matters actually litigated and determined by the judgment. The judgment is not conclusive as to matters which might have been but were not litigated and determined in the prior action. (See § 68.)."

See also Black, *Judgments* (2d ed. 1902), §611, and cases therein cited.

In this case, the only issue litigated and determined in the annulment proceedings was whether the marriage was valid. Assuming, *arguendo,* that, in those proceedings, the appellee could have asked the court to adjudicate the issue of the appellant's paternity of the child, that issue was not raised, litigated or determined. If it had been raised, its determination, on the facts, could not have affected the decision of whether the pur-

ported marriage was a legal and binding contract. The paternity question was a different cause of action from the annulment proceedings; paternity was a collateral question, not related to the determination of the validity of the marriage.

In support of his contention that *res judicata* is applicable, the appellant cites *Alvey v. Alvey,* 225 Md. 386, 171 A. 2d 92 (1961), and *White v. Athey,* 229 Md. 28, 181 A. 2d 466 (1962). In *Alvey,* the bill of complaint in the second suit was based upon the same facts and subject matter adjudicated in the prior case, which involved the same parties and their privies. The prior suit in the present case did not involve either the same facts or the same subject matter as the present case; in the prior suit, the only issue was the validity of the marriage; in the present case, the only issue is the paternity of the child. In *White,* the plaintiffs, in a prior suit, had unsuccessfully sought specific performance of a contract of sale. In the second suit, the plaintiffs unsuccessfully sought specific performance of a subsequent alleged contract for the sale of the same property, signed after the first contract. *Res judicata* was held applicable, because the questions of fact and law raised in the second suit could have been presented in the first suit. Again, the second suit involved the same subject matter as the first. In the present case, the subject matter of the first suit was only the validity of the marriage, which the paternity of the child could not affect. In short, in the cases cited by the appellant, the second suit involved directly the same basic transaction or occurrence which precipitated the initial suit, while in the present case, the paternity question was at most a collateral issue, not related in legal effect to the occurrence which gave rise to the decree of annulment.

In any event, had the appellee raised the paternity issue in the annulment proceedings, the scope of the relief to which she would have been entitled in those proceedings would not have been as broad as under the statutory Paternity Proceedings. Under Section 66G of that Act, the court, upon its own motion, can order the mother, the child and the defendant to submit to blood tests. Under Sections 66H and J(b), if the court finds the defendant to be the father, it may order the father to give bond for the support provisions which the court may di-

rect. The Paternity Proceedings statute, as the legislative declaration of its purpose makes clear, is directed to the public interest in the social and economic status of children, as well as to the ascertainment of the rights of a mother against the putative father of her child. The doctrine of *res judicata,* or estoppel by judgment, is not to be. construed, under the circumstances of this case, as depriving the mother of the right to resort to the statutory proceedings because she elected not to raise the paternity issue in the annulment case which determined a different issue.

*Order affirmed; costs to be paid by appellant.*