POLANSKY, ET AL. *v.* ORLOVE, ET AL.

[No. 131, September Term, 1968.]

*Decided March 10, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Arold H. Ripperger,* with whom was *Brooke & Ripperger* on the brief, for appellants.

*John T. Joseph,* with whom were *Richard W. Case* and *Smith, Somerville & Case* on the brief, for Bernard M. Manekin and Benjamin D. Palmer, appellees; *Philip Z. Altfeld* for State Insurance Commissioner of Maryland, appellee; submitted on brief by *Charles M. Cahn, Jr., Theodore C. Mitchell* and *Blades & Rosenfeld* for Stanley J. Orlove appellee; submitted on brief by *William C. Cahill, Jr.* and *Weinberg & Green* for Leslie Legum and Meyer Lebow appellees; no brief filed on behalf of I. Pike Zacks and Paul H. Huppman, other appellees.

MARBURY, J., delivered the opinion of the Court.

On September 16, 1965, the presiding judge of the Circuit Court of Baltimore City signed an order placing the Olympic Insurance Company of America (Olympic), a mutual company, in statutory rehabilitation pursuant to Code (1964 Repl. Vol.), Article 48A, Section 132, *et seq.* Francis B. Burch, then State Insurance Commissioner, was appointed rehabilitator of Olym-

pic. In accordance with his report upon the poor financial condition of Olympic, on June 15, 1966, the Circuit Court passed an order directing that all members and policyholders of Olympic who had policies in effect during a specified period pay their respective proportion of an aggregate assessment, represented by an additional premium or assessment on each policy equal to but not exceeding one annual policy premium. This assessment order was immediately challenged on numerous grounds by Olympic policyholders.

In order to avoid the necessity of litigating the same issue in thousands of suits for collection of the assessment, the rehabilitator reviewed and categorized all policies affected by the assessment and chose at least one policy in each category in which any policyholder had raised any factual or legal question relating to the assessment against him. On August 17, 1966, the rehabilitator presented eleven petitions alleging the pertinent facts and the court issued show cause orders to numerous policyholders which required them to show cause why the assessment should not stand. One of the defenses raised by these policyholders was that the assessment was barred by an alleged fraudulent endorsement made by agents of Olympic. In a comprehensive memorandum opinion and order dated June 28, 1967,* Judge Cardin held *inter alia* that the defense of fraud had no merit, and upheld the assessment with one exception not relevant to the instant case. An appeal from that order was dismissed by this Court as being untimely filed.

On September 22, 1967, the show cause respondents under the order of August 17, 1966, who are the appellants in this case, filed a petition for declaratory decree and for other relief in which they charged that former officers and directors of Olympic had perpetrated a deliberate and wilful fraud upon the policyholders directly and against the public indirectly. The petition alleged that these officers and directors were responsible for all losses resulting from their fraudulent act, and prayed that the assessment proceedings against Olympic policyholders be stayed until the complaints against such officers and directors had been finally determined. The appellees, the former officers

and directors of Olympic, and the insurance commissioner all filed either demurrers or motions to dismiss.

On December 18, 1967, without a hearing, Judge Cullen filed a memorandum and order dismissing the petition for declaratory relief without leave to amend. Thereafter, appellants-policyholders filed a motion for a hearing on their petition. On January 16, 1968, the Circuit Court passed an order suspending the order dated December 18, 1967, until such time as the court could hear arguments on the several demurrers and motions to dismiss.

After a hearing in open court on January 29, 1968, Judge Cullen filed a second memorandum and signed an order on March 5, 1968, which reinstated the December 18, 1967, order and terminated the one dated January 16, 1968. The appellants then filed a petition for revision of the December 18 and March 5 orders which the lower court denied in an order dated April 5, 1968. The appellants have appealed from the orders of December 18, 1967, and March 5, 1968.

Appellants present four questions on appeal:

1. Should the trial court have held a hearing upon the petition for declaratory decree and for other relief and the several demurrers and motions to dismiss filed in answer to said petition before ruling upon those pleadings?

2. Should the trial court have allowed the appellants to amend their petition for declaratory decree and for other relief?

3. Does the trial court have jurisdiction over the subject matter of the appellants' petition for declaratory decree and for other relief?

4. Did the trial court err in rejecting the appellants' petition filed April 4, 1968, for the revision of the orders dated December 18, 1967, and March 5, 1968, or for a rehearing on the issues thereby determined?

First, the appellants urge that the chancellor erroneously applied Rule 333 of the Supreme Bench of Baltimore City when he dismissed their petition for declaratory relief before affording them a hearing. Briefly, Rule 333 provides that the court

will decide petitions, etc. without a hearing unless one is requested by the person filing the petition or if the opposing party requests a hearing with his reply to the petition. The appellants maintain that both they and certain appellees asked for a hearing. On the other hand, the appellees deny that any timely request was made. Assuming, without deciding, that the lower court erred in dismissing the petition without holding a hearing, we hold that the granting of a full hearing on the demurrers and motions cured any procedural error that may have existed.

On January 16, 1968, the court suspended its order of December 18, 1967, which had dismissed the appellees' petition without leave to amend until it had the opportunity to hear argument in open court on the demurrers and motions. A hearing was held on January 29, 1968, where counsel for the appellants argued their position and submitted a memorandum in opposition. No objection was made to the court's ability to consider the demurrers and motions on a fair and impartial basis. However, on appeal the appellants infer that the chancellor who had previously rendered a decision without a hearing would be predisposed to make the same determination after a hearing since "the psychological effect already ha[d] been accomplished." This contention is utterly devoid of any merit whatsoever. Aside from the absurdity of the proposition that the chancellor's mind was so closed as to be incapable of listening to reason, the record establishes that there is no basis for finding that the lower court failed to consider with judicial propriety the arguments presented by appellants' counsel at that hearing.

Appellants' second contention is that the lower court should have allowed them to amend their petition for declaratory decree and other relief. The petition alleged that a fraud had been perpetrated upon the appellants and other policyholders by Olympic's issuance of an endorsement which provided as follows:

> "ASSESSMENT REINSURANCE This is to certify that the Olympic Insurance Company of America has purchased in its name for the benefit of all policyholders, a reinsurance policy pertaining to the assessment of the individual policyholders of the com-

pany. The benefits of this reinsurance policy extend to all policyholders and the Company shall be glad to supply additional information pertaining thereto upon request.

All terms and conditions of this policy remain unchanged.

The Olympic Insurance Company of America"

Appellants urge that the effect of this endorsement was to make them believe that Olympic guaranteed that they would not be assessed for any deficiencies. Since no such reinsurance was purchased by the company, the petition averred that the officers and directors of Olympic had committed a deliberate fraud.

The lower court held that the effect of the endorsement and the question of fraud or misrepresentation had already been passed upon in the earlier show cause proceedings in which the appellants were respondents, and that the allegation of fraud had no merit. We hold that the lower court was correct in applying to the endorsement the doctrine of *res judicata* "which bars any further action between the same parties or their privies on the same cause of action once a judgment has been rendered as to the original claim . . . ." *Levin v. Singer,* 227 Md. 47, 62, 175 A. 2d 423, 431. See *Alvey v. Alvey,* 225 Md. 386, 171 A. 2d 92. In light of *Pat Perusse Realty v. Lingo,* 249 Md. 33, 238 A. 2d 100, the fact that the appellants used the endorsement as a ·defense to the rehabilitator's claims and not in an action against any of Olympic's officers and directors does not prevent the application of the *res judicata* doctrine. Public policy, which underlies that doctrine, does not favor relitigation of identical issues. The lower court did not err in finding that appellants already had had their day in court on the issue of the alleged fraudulent endorsement.

The appellants requested that they be permitted to amend their petition with the suggestion that the elements of fraud which they mentioned might not have been too clearly stated and that they should be amplified. The chancellor refused to permit the amendment because of the difficulties and complexities which trial on the merits would cause. Since each person who might have suffered from an alleged fraud would have to show

that he reasonably relied on representations and was thereby injured, trial under an amended petition would involve separate and distinct issues as to each party asserting a claim. In addition, the chancellor found that it would be inequitable to allow the appellants to recover from directors and officers of Olympic for the benefit of all policyholders since the alleged fraud may have been perpetrated only upon a segment of the policyholders.

As this Court has often stated, "an order denying or allowing amendment will not be reviewed in the absence of a clear showing of an abuse of discretion." *Hertelendy v. Montgomery Cty.,* 245 Md. 554, 566, 226 A. 2d 672, 679, citing *Town of Somerset v. Board,* 245 Md. 52, 225 A. 2d 294. See *Baer v. Baer,* 252 Md. 586, 250 A. 2d 897. We cannot find that the lower court abused its discretion since, briefly stated, appellants' proffered amendment would complicate rather than simplify the litigation.

Thirdly, appellants argued that since equity had assumed jurisdiction over the rehabilitation of Olympic, it should have continued its jurisdiction in the present proceeding in order to avoid multiplicity of litigation. This contention is also without merit and we adopt the lower court's answer:

> "There can be no declaration of fraud *vel non* practiced against a number of persons in separate transactions. Each respondent to the show cause orders would have his own separate right to action. Equity cannot assume jurisdiction in order to avoid multiplicity of litigation. Maryland has never flatly decided the avoidance of multiplicity of suits is such an independent ground as to confer jurisdiction upon a Court of Equity. *Bachman v. Lemback,* 192 Md. 35 (1949). Even where there might appear an opportunity to apply the principle that equity will assume jurisdiction in order to prevent multiplicity of litigation, the suit must result in the simplification or consolidation of the issues. In the instant matter there can be no consolidation of the issues because the issues as to each policyholder are independent of the issues as to any other. The action as proposed by the petitioners would com-

plicate rather than simplify the proceeding. *Cf. Allender v. Ghingher,* 170 Md. 156 (1936)."

Appellants' final contention is that the lower court erred when it refused to revise its orders of December 18, 1967, and March 5, 1968, or grant a rehearing on the issues thereby determined. The general rule is that the granting or refusing of a rehearing is within the sole discretion of the trial court. *Austin v. Austin,* 234 Md. 393, 199 A. 2d 380; *Holcomb v. Fender,* 203 Md. 480, 101 A. 2d 814. The same principle applies with reference to granting or refusing to revise an order. Since appellants have not shown any injustice or abuse of discretion, we shall not disturb the lower court's decision on this point.

For the above reasons the orders of the Circuit Court of Baltimore City dated December 18, 1967, and March 5, 1968, will be affirmed.

*Orders affirmed. Costs to be paid by the appellants.*